ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

JUN 1 3 2017

JAMES N. HATTEN, Clerk
By: _____
                    Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA

    *v.*

OSCAR PEREZ (AKA OSCAR
GUSTAVO PEREZ-BERNAL);
ITZAYANA PEREZ (AKA
ITZAYANA GUADALUPE PEREZ-
BERNAL, "LUPE")

---

**UNDER SEAL**

Criminal Indictment

No. **1:17 CR 200**

THE GRAND JURY CHARGES THAT:

### Count One
*Money Laundering Conspiracy*
(18 U.S.C. § 1956(h))

1. Beginning in or about 2013, and continuing to on or about the date of this Indictment, the exact dates unknown to the Grand Jury, in the Northern District of Georgia and elsewhere, the defendants, OSCAR PEREZ (aka OSCAR GUSTAVO PEREZ-BERNAL) and ITZAYANA PEREZ (aka ITZAYANA GUADALUPE PEREZ-BERNAL, "LUPE"), did knowingly combine, conspire, and agree with each other and with others, both known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 to wit:

   a)  to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, proceeds from

the sale and distribution of a controlled substance, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b)   with the intent to conceal and disguise the nature, location, source, ownership and control, of property believed to be the proceeds of specified unlawful activity, to knowingly conduct and attempt to conduct a financial transaction affecting interstate or foreign commerce involving property represented to be proceeds of specified unlawful activity, that is proceeds from the sale and distribution of a controlled substance, by a law enforcement officer and by another person at the direction of, and with the authorization of, a federal official authorized to investigate and prosecute violations of this section, in violation of Title 18, United States Code, Section 1956(a)(3)(B).

## Background

2. During the above-listed time period, OSCAR PEREZ (hereinafter "PEREZ"), operated a convenience store named "La Tienda" and a small restaurant named "Cocina Linda Vista," both of which were located in

2

Chamblee, Georgia.  PEREZ's sister, ITZAYANA PEREZ (hereinafter "ITZAYANA"), also worked at La Tienda.

3. La Tienda and Cocina Linda Vista offered various services to their customers, including the ability to electronically transmit funds to other countries (commonly referred to as "remittances").  In order to transmit customers' funds internationally, both stores entered into agency agreements with various "money transmitters."  These money transmitters specialized in electronically wiring money and had agent locations throughout the United States and other countries.  In practice, individuals seeking to use one of these money transmitters brought currency to an agent location (oftentimes, a convenience store or grocery store).  The agent collected the funds along with certain information from the customer, such as the recipient's name and contact information, and provided the customer with a verification code that the recipient could use to retrieve the funds from another agent location.  The money transmitters therefore provided a means for customers to securely and rapidly transmit funds throughout the world.  During the above-listed time period, PEREZ and ITZYANA wired funds internationally using the money transmitters' electronic wiring systems.

4. The money transmitters charged customers a fee for using their services.  The money generated from this fee was split between the agent that processed the customer's transaction and the money transmitter.  Each of the money transmitters prohibited its agents, including La Tienda and Cocina Linda Vista,

from charging customers additional fees or commissions for transmitting customers' funds.

5. The money transmitters were each registered with the U.S. Department of Treasury, Financial Crimes Enforcement Network ("FinCEN"), which permitted them to wire third party funds.  During the above-listed time period, the Bank Secrecy Act (31 U.S.C. § 5300, *et. seq.*) and its implementing regulations imposed certain recordkeeping and reporting requirements upon money transmitters and their agents.

6. For example, the Bank Secrecy Act and its implementing regulations required these money transmitters to file certain reports with FinCEN regarding financial transactions that involved suspicious or potentially illegal activity.  31 U.S.C. § 5318(g)(1); 31 C.F.R. § 1022.320(a)(2).  These reports were commonly known as "Suspicious Activity Reports" (SARs).  Pursuant to 31 C.F.R. § 1022.320(a)(2), the money transmitter was required to file a SAR if the financial transaction at issue involved at least $2,000 in funds and the business knew, suspected, or had reason to suspect that the transaction (or a pattern of transactions of which the transaction was a part):

> a. involved funds derived from illegal activity or was intended or conducted in order to hide or disguise funds or assets derived from illegal activity (including, without limitation, the ownership, nature, source, location, or control of such funds or assets) as part of a plan to violate or evade any Federal law

or regulation or to avoid any transaction reporting
requirement under Federal law or regulation;

b.  was designed, whether through structuring or other means, to
evade any requirements of this chapter or of any other
regulations promulgated under the Bank Secrecy Act;

c.  served no business or apparent lawful purpose, and the
reporting money services business knew of no reasonable
explanation for the transaction after examining the available
facts, including the background and possible purpose of the
transaction; or

d.  involved use of the money services business to facilitate
criminal activity.

7. Money transmitters were also required to maintain records related to
certain high dollar transfers; for each transmission of $3,000 or more, money
transmitters were required to record the sender's name and address.  31 C.F.R. §
1010.410(e).  At least some of the above-listed money transmitters imposed
additional requirements upon their agents.  For instance, on November 22, 2013,
PEREZ certified his understanding that one particular money transmitter
required its agents to obtain identification from customers seeking to transmit
more than $2,000 per day.

8. The money transmitters required their agents to comply with the Bank
Secrecy Act.  During at least part of the conspiracy, PEREZ served as the Bank

5

Secrecy Act / Anti-Money Laundering Compliance Officer for La Tienda and
Cocina Linda Vista. On November 22, 2013, PEREZ signed an "Agent's Ethical
Code of Conduct Acknowledgement" on behalf of La Tienda in which he agreed
that he would not, among other things: recommend that customers split wires
by using fictitious names to send multiple wire transfers; allow customers to
wire money if he had knowledge or suspected that the funds were potentially the
proceeds from illegal activity; accept or solicit bribes, tips or gifts to facilitate
money laundering for customers; or permit customers to use false identification
to wire money.

9. To further comply with the Bank Secrecy Act, the money transmitters
mandated that agents undergo periodic training. On a September 2, 2015, anti-
money laundering compliance test, PEREZ defined money laundering as "hiding
the origin of money using a process of placement, process and integration" and
answered that when encountering suspicious activity, he should report the
activity to the money transmitter's compliance department.

10. During the above-listed time period, PEREZ and ITZAYANA along with
other individuals known and unknown to the Grand Jury, used La Tienda and
Cocina Linda Vista to transmit over $16.9 million through the money
transmitters' electronic wiring systems. The vast majority of these wires were
directed to recipients in different countries, including, most typically, Mexico.

### Manner and Means

11. During the time period of the conspiracy, PEREZ and ITZAYANA accepted kickbacks from customers who sought to transmit drug proceeds out of the country. These kickbacks exceeded the set fees charged by the money transmitters and were in direct violation of the money transmitters' agreements with La Tienda and Cocina Linda Vista.

12. PEREZ and ITZAYANA helped their customers hide the source of the funds by listing false sender names, addresses, and telephone numbers on the wires. PEREZ and ITZAYANA also intentionally "split" the wires into smaller amounts in the hopes of evading detection from the money transmitters' internal compliance programs.

13. PEREZ and ITZAYANA transferred money to Mexico for cooperating law enforcement sources as well as an undercover law enforcement officer who all stated that the funds came from the sale of narcotics. In exchange for kickbacks that exceeded the fees authorized by the money transmitters, PEREZ and ITZAYANA concealed the nature, origin, and source of these funds by listing fake names, addresses, and telephone numbers as the true senders and agreeing to split the wires into smaller amounts.

14. On or about April 27, 2015, ITZAYANA transferred funds on behalf of "Cooperating Source One" in exchange for a kickback that exceeded the fees authorized by the money transmitters. During the course of an exchange at La Tienda, ITZAYANA told Cooperating Source One that people moving money

typically let PEREZ know ahead of time that they are coming and that she and PEREZ did not send the wires all at the same time so that the money transmitters believed multiple people were coming in and out of the store. Cooperating Source One claimed to be a middle person who worked for someone that sold drugs. ITZAYANA conducted multiple wire transfers to Mexico for Cooperating Source One that listed fake sender names, addresses, and telephone numbers.

15. On or about November 4, 2015, PEREZ transferred funds to Mexico for Cooperating Source Two in exchange for a kickback that exceeded the fees already charged by the money transmitter. During the course of an exchange with PEREZ at La Tienda, Cooperating Source Two claimed a need to find a way to transmit $100,000, which the source had obtained from people who were sending "merchandise." PEREZ told the cooperating source that he wanted to help but that he also transmitted money for others. PEREZ suggested that he could stagger the transactions by transmitting $20,000 a day for the cooperating source. The cooperating source indicated that this might work and that the people the cooperating source was working with would then be able to send the "merchandise." PEREZ conducted multiple transfers to Mexico for the cooperating source that listed fake sender names, addresses, and telephone numbers.

16. On or about April 25, 2017, PEREZ met with Cooperating Source Two at La Tienda. During the meeting, Cooperating Source Two told PEREZ that the

money she had previously brought came from selling "frio," a common name for methamphetamine.  Cooperating Source Two claimed to have $100,000 from selling "coke," a common name for cocaine, that the source wanted Perez's help in moving to Mexico.  PEREZ agreed to transmit these funds in exchange for a kickback of $20 per wire.  However, Cooperating Source Two did not return to La Tienda.

All in violation of Title 18, United States Code, Section 1956(h).

### Count Two
*Sting Money Laundering*
(18 U.S.C. §§ 1956(a)(3)(B) and 2)

17. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 16 of this Indictment as if fully set forth herein.

18. On or about April 27, 2015, in the Northern District of Georgia, the defendant, ITZAYANA PEREZ, aided and abetted by others known and unknown to the Grand Jury, with the intent to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate or foreign commerce involving property represented to be proceeds of specified unlawful activity, that is, proceeds from the sale and distribution of a controlled substance, by a person at the direction of,

and with the authorization of, a federal official authorized to investigate and prosecute violations of this section.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2.

### Count Three
*Sting Money Laundering*
(18 U.S.C. §§ 1956(a)(3)(B) and 2)

19. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 16 of this Indictment as if fully set forth herein.

20. On or about November 4, 2015, in the Northern District of Georgia, the defendant, OSCAR PEREZ, aided and abetted by others known and unknown to the Grand Jury, with the intent to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of specified unlawful activity, did knowingly conduct and attempt to conduct a financial transaction affecting interstate or foreign commerce involving property represented to be proceeds of specified unlawful activity, that is, proceeds from the sale and distribution of a controlled substance, by a person at the direction of, and with the authorization of, a federal official authorized to investigate and prosecute violations of this section.

All in violation of Title 18, United States Code, Sections 1956(a)(3)(B) and 2.

**Forfeiture**

21.   Upon conviction of one or more of the offenses alleged in Counts One through Three of the Indictment, the defendants, OSCAR PEREZ (aka OSCAR GUSTAVO PEREZ-BERNAL) and ITZAYANA PEREZ (aka ITZAYANA GUADALUPE PEREZ-BERNAL, "LUPE"), shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in the money laundering offenses and all property traceable to such property including, but not limited to, a sum of money in United States currency representing the total amount of money involved in each offense for which the defendant is convicted.

22.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a.  Cannot be located upon the exercise of due diligence;

   b.  Has been transferred or sold to, or deposited with, a third party;

   c.  Has been placed beyond the jurisdiction of the court;

   d.  Has been substantially diminished in value; or

   e.  Has been commingled with other property which cannot be divided without difficulty;

It is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above; all pursuant to Title 18, United States Code,

11

Sections 981(a)(1)(C) and 982(a)(2)(B), and Title 28, United States Code, Section 2461(c).


A _____ BILL

_____
FOREPERSON


JOHN A. HORN
  *United States Attorney*

THOMAS J. KREPP
  *Assistant United States Attorney*
Georgia Bar No. 346781


ALISON B. PROUT
  *Assistant United States Attorney*
Georgia Bar No. 141666


600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181